**UNITED STATES, Appellant,**

v.

**Joselito C. TUALLA, Electrician's Mate Third Class, U.S. Coast Guard, Appellee.**

No. 99–5002.
Crim.App. No. 1079.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 19, 1999.

Decided Jan. 31, 2000.

EFFRON, J., delivered the opinion of the Court, in which GIERKE, J., and COX, S.J., joined. CRAWFORD, C.J., filed a concurring opinion. SULLIVAN, J., filed an opinion concurring in part and in the result.

For Appellant: *Lieutenant Commander Chris P. Reilly* (argued); *Captain Michael J. Devine, Lieutenant Susan Polizzotto,* and *Lieutenant Benes Aldana* (on brief).

For Appellee: *Lieutenant Sandra K. Selman,* USCGR (argued).

Judge EFFRON delivered the opinion of the Court.

A special court-martial composed of a military judge sitting alone convicted appellee, pursuant to his pleas, of the following offenses: two specifications of unauthorized

absence, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886; one specification of failure to obey a lawful order, in violation of Article 92, UCMJ, 10 USC § 892; one specification of wrongful use of anabolic steroids, in violation of Article 112a, UCMJ, 10 USC § 912a; three specifications of assault, in violation of Article 128, UCMJ, 10 USC § 928; and eight specifications of violating Article 134, UCMJ, 10 USC § 934, which included five specifications of adultery, one specification of intentionally injuring himself, one specification of obtaining Government telephone services of a value of $996.60 by false pretense, and one specification of willfully and wrongfully confining and holding an individual against her will.

Appellee was sentenced to a bad-conduct discharge, confinement for 5 months, reduction to pay grade E–2, forfeiture of one-third of his pay per month for 6 months, and a fine of $996.60, with provision for further confinement of one month if the fine was not paid. Except for the fine-enforcement provision, which was disapproved, the convening authority approved the sentence as adjudged, including the fine and forfeitures at issue in this appeal.

The Court of Criminal Appeals approved the findings. The court disapproved the fine, but approved that portion of the sentence which included a bad–conduct discharge, confinement for 5 months, forfeiture of $326 pay per month for 6 months, and reduction to E–2. 50 MJ at 565.

The General Counsel of the Department of Transportation certified the case to this Court, requesting review of the following issues:

I. WHETHER THE COAST GUARD COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW IN FAILING TO APPLY *UNITED STATES v. HARRIS,* 19 MJ 331 (CMA 1985), AS BINDING PRECEDENT.

II. WHETHER THE COAST GUARD COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW IN HOLDING THAT RCM 1003(b)(3) PREVENTS A SPECIAL COURT–MARTIAL FROM IMPOSING A SENTENCE TO A FINE IN ADDITION TO FORFEITURES WHERE THE COMBINED FINE AND FORFEITURES DO NOT EXCEED THE AMOUNT OF TWO–THIRDS FORFEITURES AUTHORIZED FOR THAT FORUM.

*See* Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1994). We reverse on the ground that RCM 1003(b), Manual for Courts–Martial, United States (1998 ed.), does not preclude a special court-martial from imposing a sentence that includes both a fine and forfeitures.

## I. BACKGROUND

The President is authorized to establish the maximum punishment for offenses under the UCMJ, subject to limitations in the Code applicable to specific offenses and types of courts-martial. *See* Art. 56, UCMJ, 10 USC § 856; *see also* Arts. 18–20, UCMJ, 10 USC §§ 818–20 (jurisdictional limitations on punishments that may be imposed by general, special, and summary courts-martial). The President has authorized courts-martial to impose a variety of punishments, including those imposed in the present case: forfeiture of pay, fines, reduction in pay grade, confinement, and punitive separation. RCM 1003(b).

Article 19, UCMJ, 10 USC § 819, provides broad authority for special courts-martial to "adjudge any punishment not forbidden" by the UCMJ "under such regulations as the President may prescribe." The statutory limitations pertinent to the sentence imposed in the present case under Article 19 preclude a special court-martial from adjudging a sentence that includes a dishonorable discharge, confinement for more than 6 months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than 6 months. Article 19 does not expressly limit the other types of punishment adjudged in this case, including fines and reductions in grade. *See United States v. Sears,* 18 MJ 190 (CMA 1984) (special courts-martial are authorized to impose fines).

The President has regulated the adjudication of fines by courts-martial in RCM 1003(b)(3), which is based on paragraph 126*h*(3) of the Manual for Courts–Martial,

United States, 1969 (Revised edition). *See* 1998 Manual, *supra* at A21–68.[1] In *United States v. Harris,* 19 MJ 331 (CMA 1985), the accused challenged the legality of his special court-martial sentence—which included both a fine and forfeitures—on the ground that, under the Manual, only a general court-martial was authorized to combine fines and forfeitures. *Harris* rejected that interpretation of the Manual, concluding that a fine and forfeitures could be combined in a single summary or special court-martial sentence, so long as the combined total did not exceed the amount of the maximum forfeitures that could be adjudged at such a court. *Id.* at 332.

RCM 1003(b)(3) of the current Manual employs terminology similar in pertinent respects to the provision from the 1969 Manual at issue in *Harris. See United States v. Gonzalez,* 33 MJ 875 (AFCMR 1991); *United States v. Czeck,* 28 MJ 563 (NMCMR 1989). There have been no amendments to RCM 1003(b)(3) subsequent to our decision in *Harris.*

## II. DISCUSSION

### A. The Holding in *Harris*

Appellee challenged various aspects of his sentencing proceeding in his appeal to the Court of Criminal Appeals, but he did not question the combination of a fine and forfeitures. On its own motion, the Court of Criminal Appeals, without addressing *Harris,* ruled that no such combination could be adjudged by a special court-martial. 49 MJ at 556. Upon reconsideration, the court declined to follow *Harris* on the ground that the discussion in *Harris* concerning fines and forfeitures was *"obiter dicta."* 50 MJ at 563–64. The court focussed on the fact that in *Harris,* the decision to order further pro-

ceedings was based on an unrelated issue involving admissibility of a confession.

The view of *Harris* adopted by the Court of Criminal Appeals is too narrow. Our decision and subsequent order in that case did not reverse or set aside the court-martial sentence, which combined a fine and forfeitures. Instead, we set aside the pertinent portions of the lower court's decision and provided the lower court and convening authority with the option to choose among a variety of further proceedings, including a complete rehearing, a rehearing on sentence, or reassessment of the sentence. *See* 19 MJ at 341, 21 MJ 173. Each of these proceedings carried the possibility of a sentence that included a fine and forfeitures.

Our decision in *Harris* concerning fines and forfeitures was not an idle remark made in passing, but was designed to guide the conduct of all such proceedings. At any of the further proceedings, it would have been impermissible for the lower court or the military judge—in light of our holding *Harris*—to prohibit a special court-martial from imposing a sentence that combined a fine and forfeitures.

The same considerations would pertain if we were the recipient of a similar remand order from the Supreme Court. Had the Supreme Court issued *Harris,* its decision would have precluded us from prohibiting a combination of a fine and forfeitures during further proceedings in the case. The lower courts are no less bound by the decisions of this Court. *See United States v. Allbery,* 44 MJ 226 (1996).

### B. The Interpretation of the Manual in *Harris*

■ In the present case, the court below declined to apply *Harris* on the ground that the decision, if not *dicta,* should be

---

1. With respect to the power of the different types of courts-martial to adjudge fines, RCM 1003(b)(3) provides: "Any court-martial may adjudge a fine instead of forfeitures. General courts-martial may also adjudge a fine in addition to forfeitures. Special and summary courts-martial may not adjudge any fine in excess of the total amount of forfeitures which may be adjudged in that case." Paragraph 126*h* (3) of the 1969 Manual addressed the same matter as follows: "All courts-martial have the power to adjudge fines instead of forfeitures in cases involving members of the armed forces. General courts-martial have the further power to adjudge fines in addition to forfeitures in appropriate cases. See Section B, 127*c*. Special and summary courts-martial may not adjudge any fine in excess of the total amount of forfeitures which may be adjudged in a case."

overruled. When considering whether to overrule a precedent, we are guided by the doctrine of *stare decisis*. Under this fundamental principle, adherence to precedent "is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

■ *Stare decisis* is a principle of decision making, not a rule, and need not be applied when the precedent at issue is "unworkable or ... badly reasoned." *Id.* As a general matter, however, "[a]dhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.'" *Id.* (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932)(Brandeis, J., dissenting)).

In the present case, the court below asserted that *Harris* improperly overruled a provision of the Manual for Courts–Martial by permitting the combination of fines and forfeitures in special courts-martial. 50 MJ at 564–65. We do not agree that *Harris* overruled the Manual. We note that the Manual does not expressly prohibit the combination of fines and forfeitures in special courts-martial. In that context, *Harris* should be viewed as a case involving an interpretation of a provision that is susceptible of varying constructions, including the interpretation offered by the court below, rather than as a case overturning a provision of the Manual.

Under the doctrine of *stare decisis*, the question is not whether the interpretation offered by the lower court is plausible; it is whether the *Harris* decision is so unworkable or poorly reasoned that it should be overruled. The historical references, drafting considerations, and policy matters cited by the court below do not demonstrate that RCM 1003(b)(3), as interpreted in *Harris*, is unworkable, or that *Harris* is so poorly reasoned that it should be overruled.

In our consideration of whether to abandon *Harris*, we have taken into account Executive acquiescence in the interpretation of RCM 1003(b)(3) set forth in that opinion. Although the President has prescribed other amendments to the Manual on at least nine occasions in the nearly 15 years since *Harris* was decided, including amendments to RCM 1003, no changes have been made in RCM 1003(b)(3).

For purposes of interpretation, Executive acquiescence is entitled to considerable weight in view of the relative ease with which the Manual can be amended. The authority to revise the Manual, an Executive Order, is vested in a single individual, the President. We are well aware that the President takes into account a variety of views from differing sources when considering amendments to the Manual, but none of those sources has the power to block an amendment when the President believes that a court improperly overruled or incorrectly interpreted a provision of the Manual. The President's acquiescence in this Court's interpretation of a Manual provision over an extended period of time lends strong support to the proposition that *Harris* is neither unworkable nor poorly reasoned. Moreover, such acquiescence casts considerable doubt on the suggestion by the court below that our Court in *Harris* overruled a provision of the Manual.

### C. The Effect of Article 58b

We have considered the proposition advanced by the court below that a prohibition on the combination of fines and forfeitures by special courts-martial is required by the enactment of Article 58b, UCMJ, 10 USC § 858b. Pub.L. No. 104–106, Title XI, § 1122, 110 Stat. 463, as amended by Pub.L. No. 104–201, § 1068, 110 Stat. 2655 (1996). Under Article 58b, even if forfeitures are not imposed by a special court-martial, the servicemember is required to forfeit two-thirds of pay due during a period of confinement when the sentence includes a bad-conduct discharge, subject to statutory exceptions.

Because the court below determined that effective date considerations precluded the application of Article 58b forfeitures to appellee, 49 MJ at 555, that court was not present-

ed with the question of whether the combination of a fine and pay forfeited under Article 58b would be subject to either RCM 1003(b)(3) or the jurisdictional limitation on special courts-martial of Article 19. In that posture, the enactment of Article 58b does not provide a basis for rejecting the application of *Harris* to the present case.

Moreover, although we decline to offer a definitive interpretation of the relationship between Article 58b and RCM 1003(b)(3) in the absence of a specific case or controversy, we note that these two provisions are not necessarily in conflict. There are many circumstances in which a sentence could include a fine without implicating Article 58b. For example, pay is not forfeited under Article 58b if a special court-martial sentence does not include a bad-conduct discharge, if the sentence does not include confinement, or if the forfeiture is waived under Article 58b(b). Likewise, if the Article 58b forfeitures involve a period of less than 6 months' confinement, it is possible that the combination of a fine, adjudicated forfeitures, and pay forfeited under Article 58b can be adjusted to avoid implicating RCM 1003(b)(3). Careful action by convening authorities and staff judge advocates may well moot many of these issues, and it is possible that the President may issue an amendment to the Manual before any such issues reach our Court. In any case, it is sufficient to note that enactment of Article 58b does not lead to the conclusion that RCM 1003(b)(3), as interpreted by *Harris*, is unworkable.

## III. CONCLUSION

■ Regardless of whether *Harris* is viewed as a binding precedent under *Allbery* or merely as a reasonable interpretation of the Manual supported by Executive acquiescence, we see no compelling reason to reach a different result today. We conclude that the court below erred as a matter of law in holding that RCM 1003(b)(3) prevents a special court-martial from imposing a sentence that combines a fine and forfeitures. Our conclusion answers the second certified question in the affirmative. In light of that conclusion, the first certified question is moot.

The decision of the United States Coast Guard Court of Criminal Appeals is affirmed as to findings and set aside as to sentence. The record of trial is returned to the General Counsel of the Department of Transportation for remand to that court for further proceedings.

CRAWFORD, Chief Judge (concurring):

The Court of Criminal Appeals erred by failing properly to apply *United States v. Harris,* 19 MJ 331 (CMA 1985), to the facts of this case. While readily conceding the applicability of *stare decisis* to this case's resolution, I write again to remind our lower courts that the doctrine is not a talisman to which blind allegiance must be given. *See United States v. Boyett,* 42 MJ 150 (1995); *United States v. Allbery,* 44 MJ 226, 230 (1996) (Crawford, J., concurring in part and dissenting in part).

When considering precedent and its applicability to any case under deliberation, a lower court's initial touchstone is the facts, and perhaps the scope of prevailing conditions, which gave rise to the preceding judgment. This is particularly true in cases that involve evidentiary and procedural rules. *See Payne v. Tennessee,* 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). As Justice Brandeis cogently explains in the dissenting opinion cited by the majority:

> In the cases which now come before us there is seldom any dispute as to the interpretation of any provision. The controversy is usually over the application to existing conditions of some well-recognized constitutional limitation.

*Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 410, 52 S.Ct. 443, 76 L.Ed. 815 (1932).

The forum for initiating a new or different application of facts to existing law is the trial court. The bellwether to bring changed conditions to the forefront should be either the trial or defense counsel.

*Stare decisis* need not lead to an "imprisonment of reason"[1] when facts or percep-

---

1. *See United States v. International Boxing Club*     *of New York, Inc.,* 348 U.S. 236, 249, 75 S.Ct.

tions, or even underlying assumptions, have changed; there is a showing that a particular decision is unworkable;[2] there have been intervening developments in the law, public policy, or social trends;[3] or the historical analysis underlying the precedent was wrong.[4] One could also argue that cases decided by a narrow margin by this or other appellate courts should have less precedential value than unanimous ones.[5]

It is one thing to give precedent an "unceremonious 'heave-ho' " without thoughtful consideration. *See Harper v. Virginia Department of Taxation,* 509 U.S. 86, 108–09, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (Scalia, J., concurring)(quoting Earl M. Maltz, *Some Thoughts on the Death of Stare Decisis in Constitutional Law,* 1980 Wis.L.Rev. 467); *see also Lee, supra,* (n. 2 below) at 648. It is quite another to jettison law when the circumstances have changed and a former approach "must bow 'to the lessons of experience and the force of better reasoning.' " *Solorio v. United States,* 483 U.S. 435, 450, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987)(quoting *Burnet, supra* at 406–08, 52 S.Ct. 443 (Brandeis, J., dissenting)).

Our lower military tribunals are neither free to ignore mandates from this Court, nor to avoid the application of settled principles of law to future cases where the facts are substantially similar. However, these courts, and the parties who litigate before them, must ensure that military law continues to develop in both a principled and intelligent manner so our court can "bring its opinions into agreement with experience and with facts newly ascertained." *Vasquez v. Hillery,* 474 U.S. 254, 265–66, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)(quoting *Burnet, supra* at

412, 52 S.Ct. 443 (Brandeis, J., dissenting)); *see Maltz, supra* at 470.

SULLIVAN, Judge (concurring in part and in the result):

In this case, the question is directly presented to our Court—can one of our four lower appellate courts disregard one of our Court's precedents? This is the core question in the first certified issue. I would answer it. The majority doesn't. I would answer it because the answer is important to the viability of the doctrine of *stare decisis* in our system of justice in the military. The simple answer to the question is that our Court's precedents, as a rule, must be followed by the courts below.[*] However, in the special circumstances of *United States v. Harris,* 19 MJ 331 (CMA 1985), the court below was not bound or controlled by its reasoning.

*United States v. Harris* was a two-judge decision of this Court. One of the judges concurred in the result and stated that he agreed in the disposition of Issue II. "Disposition" is a judicial term of art referring to the result, and not to reasoning. *See B.E. Witkin, Manual on Appellate Court Opinions* § 83 at 147 (1977) ("After the *legal questions* have been determined, the only remaining element of the opinion is a brief statement indicating the *disposition* of the appeal. This feature should not be brushed off too lightly, however, as lack of precision here may make more work for the appellate court.") (emphasis added), quoting ABA, Section of Judicial Administration, Committee Report: Internal Operating Procedures of Appellate Courts at 33 (1961); *see generally*

---

259, 99 L.Ed. 290 (1955)(Frankfurter, J., dissenting).

**2.** *See, e.g., United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), overruling *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and reverting to the test under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), when examining Double Jeopardy Clause matters. *See* Thomas R. Lee, *Stare Decisis in Historical Perspective: From the Founding Era to the Rehnquist Court,* 52 Vand. L.Rev. 647 (1999).

**3.** *See* William N. Eskridge, Jr., *Overruling Statutory Precedents,* 76 Geo. L.J. 361 (1988).

**4.** *See Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), overruling *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

**5.** *See Payne v. Tennessee, supra; cf.* Mark Alan Thurman, Note, *When The Court Divides: Reconsidering the Precedential Value of Supreme Court Plurality Decisions,* 42 Duke L.J. 419 (1992).

[*] *See United States v. Jones,* 23 MJ 301, 302 (CMA 1987).

Ruggero J. Aldisert, *Opinion Writing* §§ 9.4 and 9.5 at 135–39 (1990). In my view, *Harris* was not binding precedent since it was a one-judge decision on the "fine and forfeiture" issue (Chief Judge Everett gave his view, and Judge Cox concurred in the result without stating any reasoning). The court below could have disregarded *Harris,* not because the reasoning in it was *dicta,* but because the reasoning of only one judge in *Harris* cannot become binding precedent of our Court. A majority of our Court is needed to make binding precedent. In a two-judge court (the status of our Court at the time of *Harris*), one judge does not make a majority.

Therefore, I would answer the first certified question in the negative. On the second certified question, however, I join the majority in finding error.